**FREEMAN MATHIS & GARY, LLP**
**Attorneys at Law**
**BY: JENNIFER L. WARD, ESQUIRE**
      **CHRISTOPHER M. CURCI, ESQUIRE**
**Attorney ID Numbers: 85019/309820**
**1800 John F. Kennedy Blvd.**
**Suite 1500**
**Philadelphia, PA 19103**
**Phone: (267) 758-6009**
**Fax: (267) 239-0050**
**Emails: jward@fmglaw.com/ccurci@fmglaw.com**
**Attorneys for Defendant, National Board of Osteopathic Medical Examiners, Inc.**

**16    4119**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STANLEY A. STEIN,** <br>                    **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **Docket No:** |
| **NATIONAL BOARD OF OSTEOPATHIC** <br> **MEDICAL EXAMINERS, INC.,** | **NOTICE OF REMOVAL** |
|             **Defendant.** | |

Defendant, National Board of Osteopathic Medical Examiners, Inc. (the "Defendant"), by

and through its undersigned counsel, hereby give notice of removal of the above-captioned

matter from the Court of Common Pleas of Delaware County, Pennsylvania, in accordance with

28 U.S.C. § 1441 inasmuch as the matter raises a federal question under 18 U.S.C. § 1961, *et*

*seq*. In support of this Notice of Removal, Defendant respectfully submits the following:

      1.       On July 1, 2016, Plaintiff, Stanley A. Stein, commenced the underlying
action by way of a Complaint filed with the Court of Common Pleas of Delaware
County, Pennsylvania. A true and correct copy of Plaintiff's Complaint is
attached hereto as Exhibit "A".

      2.       Plaintiffs served the Complaint on Defendant on or about July 12, 2016.

      3.       Defendant is the only defendant in this matter.

4.      This matter may be removed on the basis of a federal question as the Complaint asserts claims for violation of the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12101, *et seq*., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Exhibit "A".

5.      This Notice of Removal is timely as it has been filed within thirty (30) days of service of the attached Complaint.

6.      Notice of removal has been provided this date to the Plaintiff and to the Prothonotary of the Court of Common Pleas of Delaware County, Pennsylvania. (See Exhibit "B" hereto).

7.      Attached hereto as Exhibit "C" is a true and correct copy of the docket, all process, pleadings, and orders which have been received by the Defendants in the underlying matter in the Court of Common Pleas of Delaware County, Pennsylvania, excluding the Complaint which is attached hereto as Exhibit "A".

WHEREFORE, Defendants respectfully give notice that the above-captioned matter is

hereby removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

Dated: August 1, 2016                By:      _____

JENNIFER L. WARD, ESQUIRE
CHRISTOPHER M. CURCI, ESQUIRE
Attorneys for Defendant,
National Board of Osteopathic Medical
Examiners, Inc.

## CERTIFICATE OF SERVICE

I, Christopher M. Curci, Esquire, attorney for Defendant, National Board of Osteopathic Medical Examiners, Inc., hereby certify that on August 1, 2016, I served a true copy of the foregoing Notice of Removal on the following counsel for Plaintiffs by way of First-class Mail, postage pre-paid:

Stewart C. Crawford, Jr., Esquire
THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
doing business as CRAWFORD LAW
55 N. Lansdowne Avenue
Lansdowne, Pa 19050

Dated: August 1, 2016                    By:    _____
                                                CHRISTOPHER M. CURCI, ESQUIRE

# EXHIBIT A

THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
By: Stewart C. Crawford, Jr., Esquire
Attorney Id. No.: 202188
55 North Lansdowne Ave.
Lansdowne, Pa 19050
Telephone: (877)-992-6311
Web: www.crawfordlaw.us
E-Mail: scrawford@crawfordlaw.us
Firm File No.H13-0029



*Attorney for Plaintiff, Stanley A. Stein*

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

| | | |
|---|---|---|
| STANLEY A. STEIN | : | |
| 2823 Chichester Ave., | : | |
| Boothwyn, PA 19061 | : | IN CIVIL ACTION NO. |
| | : | 2016 - 5775 |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF OSTEOPATHIC | : | JURY TRIAL DEMANDED |
| MEDICAL EXAMINERS, INC. | : | |
| 8765 W. Higgins Road, Suite 200, | : | |
| Chicago, IL 60631-4174 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, Stanley A. Stein ("Plaintiff" or "Mr. Stein") by and through his undersigned attorney, hereby alleges and states as follows:

### Parties

1. Stanley A. Stein is an adult individual, residing at the above address. Mr. Stein was employed by the defendant until April 2013.

2. Upon information and belief, defendant, the National Board of Osteopathic Medical Examiners, Inc. (the "defendant" or "NBOME") is an Indiana business entity authorized to transact business in the Commonwealth of Pennsylvania.

1

Defendant maintains a principal place of business the above address and is subject to service of process in the jurisdiction pursuant to 42 Pa.C.S. Sec. 5322. Defendant employs more than 20 people.

## Factual Allegations

3.      Plaintiff, Stanley A. Stein was born on February 4, 1950.

4.      At the age of four, Plaintiff suffered a trauma related to a surgical procedure that caused him to suffer significant blood loss. This blood loss cut off the flow of oxygen to his brain resulting in a condition known as frontal lobe syndrome.

5.      An injury typically seen with NFL players or veterans who have experienced concussive events, a person with frontal lobe syndrome may show reduced verbal fluency or impaired expressive language. A person with frontal lobe syndrome might also lack insight and judgment, but generally does not have marked cognitive abnormalities or memory impairment. Further, a person with frontal lobe syndrome may have seizures.

6.      Plaintiff's condition is controlled through treatment by a physician; therefore, Plaintiff possesses none of the adverse side effects noted above. The only lingering effect that eludes treatment is a mild melancholy when the traumatic event itself is discussed. Plaintiff's condition does not interfere with his ability to perform the job at issue.

7.      In December 2012, Plaintiff responded to an advertisement for a job that was posted by the National Board of Osteopathic Medical Examiners, Inc. (the "Employer"). Essentially, the job involved assisting in the evaluation of doctors; in part, by role playing (or acting) as a patient and grading the performance and bedside manner of certain doctors.

8. Plaintiff submitted his application for that job and received a favorable response right away. Plaintiff was informed that the job was a permanent position and would involve a lot of hours that would likely lead up to a full time position (i.e. 40 hours per week). Plaintiff was further informed that the company was looking for a candidate in their mid-sixties. Plaintiff was in his sixties.

9. The acceptance of this application represented the first screening by the Employer of Plaintiff's aptitude for the position. Plaintiff passed this screening and was asked to attend orientation in January 2013.

10. In January 2013, Plaintiff attended the orientation. At this orientation, Plaintiff was provided a number of tests that measured his ability to memorize a short script (i.e. the role playing as a patient). As part of the orientation process, Plaintiff disclosed at this time all medical conditions, including his frontal lobe syndrome.

11. This battery of tests and medical disclosures in January represented the second screening by the Employer of Plaintiff's aptitude for the position. Plaintiff passed this screening and was asked to return in March 2013 for additional training and a physical examination.

12. In March 2013, Plaintiff attended training and was also given a medical screening to ensure that he was fit enough to play the role of a patient in the doctor evaluations (i.e. that he could wear a gown and lift his limbs or cough on cue).

13. This medical examination and training in March represented the third screening by the Employer of Plaintiff's aptitude for the position. Plaintiff passed this screening and was asked to return in April for additional training.

14.     On April 22, 2013, Plaintiff attended a lecture, an overview of the job responsibilities, and job training. As part of the training, he (along with the other new hires) were given a series of 4 to 5 tests that measured the performance of the subject doctors. Essentially, the new recruits watched videos of doctor-patient interactions and were asked to grade the doctors assessing their people skills, empathy, linguistic ability, treatment plan communication, etc. The scores by the recruits were then measured against scores previously provided by a panel of experts with the goal of not significantly deviating from those expert conclusions.

15.     This series of 4 to 5 tests on April 22, 2013 represented the fourth screening by the Employer of Plaintiff's aptitude for the position. Plaintiff passed this screening (i.e. his scores did not significantly deviate from the expert scores).

16.     On April 23, 2013, Plaintiff appeared for work at 9:00 am but was asked to wait in the reception area. Plaintiff was then led to an examination room where he met with the same doctor who gave him the physical examination in March.

17.     Apparently, this doctor had recently discovered Plaintiff's frontal lobe syndrome disclosure on his application and wanted to speak with him about it. She indicated that frontal lobe syndrome was "pretty important," to which, Plaintiff indicated that it was treated with medication, was under control and unremarkable (i.e. it would not interfere with his ability to do the job).

18.     Nevertheless, the doctor claimed that "it is a progressive disease that gets worse as we get older." She further added "We need to know if we are going to be dealing with the same person now as we are 6 months from now." The Plaintiff insisted that his disease is managed and that she is free to speak to his treating physician, a specialist in this field who treats returning war veterans who have this same disorder.

4

Importantly, this statement by the doctor reveals that age is also a factor in the discrimination since that doctor is seemingly anticipating a degeneration of sorts over a successive period of time.

19. The doctor did not ask for a more detailed medical history nor did she consult with Plaintiff's physician. Moreover, the doctor refused to accept Plaintiff's offer of a more detailed medical history. Instead, she unilaterally concluded that Plaintiff was somehow medically unqualified for the job due to the existence of his disorder without a more extensive review of his medical history.

20. Importantly, Plaintiff's disorder was not manifesting any symptoms nor has it historically posed problems when treated (i.e. it would be unlikely to progress to a point to ever interfere with his job performance). This concern by the Employer was simply the doctor's preconceived understanding of the range of symptoms that could manifest in a patient with frontal lobe syndrome interfering with her assessment of this employee's performance (i.e. a prejudicial determination)

21. Later that same day, Plaintiff was subjected to a substantially similar battery of tests that he had passed the day before. By all appearances Plaintiff again ~~successfully completed those testes, passing all but one of them.~~ With respect to that one test that he failed; it was quite different from all of the other tests administered to that point. The final test was the longest training video yet and posed more difficult challenges; it was the kind of test that would be expected at a point further into the training regimen, not one that a beginner could be expected to complete.

22. The doctor in this latest video spoke English as a second language and had some difficulty communicating a certain word to the patient. Nevertheless, Plaintiff gave her a score somewhere between 3 and 5 (out of 10) recognizing some of the additional

positive bed side measures that the doctor in the video took to accommodate the patient (i.e. assisting her with socks). This score was alleged by the Employer to have deviated from the expert's prior scoring of the doctor's performance.

23.    The Employer seemingly believed that Plaintiff's frontal lobe syndrome was the underlying explanation for the score deviation. Plaintiff was accordingly terminated. Plaintiff suspects that this rigged test result was part of the agenda to create a pretext to terminate Plaintiff on the basis of his frontal lobe syndrome. Notably, defendant attempted in its EEOC position statement to articulate a second pretext (i.e. violating appropriate social boundaries).

24.    Plaintiff believes that he was set up to fail (i.e. that an advanced test was intentionally administered to a novice employee to support the suspicion that the Plaintiff is physically unfit for the job).

25.    Plaintiff received payment for April 22, 2013 and April 23, 2013.

26.    Essentially, notwithstanding the fact that that Plaintiff passed all appropriate screenings for the job and was to perform the job, Plaintiff was terminated for having frontal lobe syndrome. The doctor who questioned Plaintiff about his disability on the final day could not overcome her improper preconception that Plaintiff would somehow devolve as his medical condition progressed. She made an erroneous assumption that Plaintiff's condition would worsen to a point that he was incapable of performing his employment duties.

27.    The foregoing discrimination violates Title VII of the Civil Rights Act as well as related Pennsylvania laws prohibiting discrimination in the workplace, 43 P.S. Sec. 951-963.

6

28.     Charges were dual filed with both the EEOC and the State or local Agency as both an age and disability claim.

29.     On May 19, 2014 the Employer attempted to rebut Mr. Stein's allegations in a position statement, suggesting that Mr. Stein was deemed not qualified "solely" by reason of the failed benchmark tests required of "all" employment candidates. (See Exhibit 1 hereto, the defendant's May 19, 2014 submission to the EEOC).[1]

30.     On Page Two of its Position Statement (4th paragraph down), NBOME identifies the qualities it seeks for an effective employment candidate (e.g., Reliability, Superb Recall Skills, Ability to Follow Direction, Flexibility, Fairness, Ability to Portray, etc.). Nothing in Mr. Stein's disability would disqualify him from maintaining such attributes. Rather, the examining physician's own preconceived misunderstanding of Frontal Lobe Syndrome and Age interfered with her judgment (i.e. she improperly treated all FLS patients as if they are defective rather than recognizing the fact that Mr. Stein is capable of performing the job.)

31.     On Page Three of its Position Statement (under the February 13, 2013 section), NBOME claims that the February 13th medical examination revealed that Mr. Stein lacked appropriate social boundaries that "Mr. Stein was sharing much more information than the average SP candidate during initial screening. Some behavior was characteristic of emotional instability." This commentary is disingenuous; Mr. Stein and the physician were engaged in normal dialogue for an employer and an employee (i.e. this was not just a clinical environment; this was an employment related examination). This mutual conversation included the expression of a shared interest in organic and GMO free diets. Indeed, as evidence of this mutual conversation, the physician disclosed

---

[1] Exhibit 1 is intended to be incorporated in its entirety into the factual allegations of this Complaint.

7

to Mr. Stein certain personal information (i.e. her husband's reluctance to try organic and GMO free food). Furthermore, the physician actually complimented Mr. Stein's ability to articulate a set of symptoms and emulate the realistic physical actions of someone who was an actual patient.

32.    On Page Three of its Position Statement (under the February 13, 2013 section), NBOME erroneously claims that Mr. Stein began to cry during the February 13th examination. Mr. Stein did indeed cry, but not until the April 23, 2013 meeting with the physician; the meeting when he was informed by the employer of their belief that his disability would interfere with his employment.

33.    On Page Four of its Position Statement (under the April 23, 2013 section), NBOME *admits* that NBOME held a separate meeting with Mr. Stein oriented around his FLS and was immediately thereafter administered a series of benchmark tests. Further, Mr. Stein was provided a series of benchmark tests on the day before (i.e. April 22nd) *and passed*. Notably, the administrator of those tests advised Mr. Stein that it was not necessary to pass every single benchmark test. Essentially, the testing was a pre-textual ruse designed to create a false reason to terminate Mr. Stein independent of their discriminatory assessment concerning FLS; all the while FLS preconceptions coupled with Age are what drove the decision to terminate Mr. Stein.

34.    On pages 5 and 6 of its Position Statement, NBOME erroneously suggests that Mr. Stein is not disabled. Mr. Stein has been on social security disability since February 2007. See Exhibit A, Medicare Card reflecting a benefit entitlement since 2007 when he was only 57 (i.e. otherwise unqualified for SSI but qualified for SSDI).

35.    Essentially, the physician's preconceived notions of FLS interfered with her assessment of Mr. Stein who isn't symptomatic of every plausible FLS effect; rather,

8

Mr. Stein's treatment is effectively managed by his physician. Mr. Stein has all of the attributes necessary for employment at this position (e.g., Reliability, Superb Recall Skills, Ability to Follow Direction, Flexibility, Fairness, Ability to Portray, etc.). In other words, the employer treated every FLS patiently equally without recognizing that Mr. Stein's FLS is in the milder end of the spectrum (i.e. they drew an illegal line electing to not hire anybody with FLS). Essentially, nothing that the defendant observed would justify a conclusion that Mr. Stein was unqualified for the position; rather, it was merely the knowledge of Mr. Stein's medical condition that prejudiced his employment opportunities.

36.     Upon information and belief, defendant has failed to retain adequate employment records (including the records of the benchmark tests administered to "all" employment candidates). These are the tests that supposedly support defendant's defense that was articulated in its position statement. Specifically, the Employer tendered an affidavit to the EEOC suggesting that one of their employees (a direct supervisor of Mr. Stein) had shredded all of the records pertaining to Mr. Stein within two months of Mr. Stein's termination. According to the EEOC, this employee then resigned. The EEOC believed that the retention of these employment records for only two months violated the law.

37.     Plaintiff received a right to sue letter that was issued on December 3, 2015. (See Exhibit 2 hereto).

WHEREFORE, Plaintiff demands judgment in excess of $50,000, for the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, certain administrative costs, attorney fees, punitive damages, and whatever additional relief the Court may deem proper.

9

## COUNT I- DISCRIMINATION
(Plaintiff vs. Defendant Employer)

38.    Plaintiff repeats and re-alleges all of the foregoing paragraphs as well as all of the following paragraphs, as if they were set forth herein at length.

39.    The Defendant has discriminated against the Plaintiff because of his age, his medical condition, and/or his disability in violation of 43 P.S. 951 *et.seq.*, the Pennsylvania Human Relations Act prohibiting discrimination in employment, and other rules regulations and laws designed to prevent such conduct.

40.    The Defendant has discriminated against the Plaintiff because of his age, his medical condition, and/or his disability in violation of Title VII and other rules regulations and laws designed to prevent such conduct.

41.    As a direct and proximate result of this conduct, Mr. Stein suffered damages. The Employer is liable for those damages.

WHEREFORE, Plaintiff demands judgment in excess of $50,000, for the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, certain administrative costs, attorney fees, punitive damages, and whatever additional relief the Court may deem proper.

## COUNT II- ADA & ADEA
(Plaintiff vs. Defendant Employer)

42.    Plaintiff repeats and re-alleges all of the foregoing paragraphs as well as all of the following paragraphs, as if they were set forth herein at length.

43.    The Defendant has violated the Americans with Disabilities Act as well as the Age Discrimination in Employment Act.

44.    As a direct and proximate result of this conduct, Mr. Stein suffered damages. The Employer is liable for those damages.

10

WHEREFORE, Plaintiff demands judgment in excess of $50,000, for the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, certain administrative costs, attorney fees, punitive damages, and whatever additional relief the Court may deem proper.

## COUNT III- NEGLIGENCE PER SE
(Plaintiff vs. Defendant Employer)

45. Plaintiff repeats and re-alleges all of the foregoing paragraphs as well as all of the following paragraphs, as if they were set forth herein at length.

46. The Employer actions violated certain statutes and regulations that were designed to prevent the harm that ensued.

47. The Employer breached various duties and violated those laws resulting in harm to Plaintiff.

48. The Employer is negligent per se for violating those statutes and Plaintiff has been harmed as a consquence.

WHEREFORE, Plaintiff demands judgment in excess of $50,000, for the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, certain administrative costs, attorney fees, punitive damages, and whatever additional relief the Court may deem proper.

## COUNT IV- BREACH OF CONTRACT & WRONGFUL TERMINATION
(Plaintiff vs. Defendant Employer)

49. Plaintiff repeats and re-alleges all of the foregoing paragraphs as well as all of the following paragraphs, as if they were set forth herein at length.

50. The Employer violated public policy by terminating employee under the circumstances described above. These same action violated the employment contract and promise to employ.

11

47.     The Employer breached various duties and violated those laws resulting in harm to Plaintiff.

48.     Plaintiff has been harmed as a result.

WHEREFORE, Plaintiff demands judgment in excess of $50,000, for the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, certain administrative costs, attorney fees, punitive damages, and whatever additional relief the Court may deem proper.

Stew Crawford, Jr., Esq.

*Counsel for Plaintiff*

THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
By: Stewart C. Crawford, Jr., Esquire
Attorney Id. No.: 202188
55 North Lansdowne Ave.
Lansdowne, Pa 19050
Telephone: (877)-992-6311
Web: www.crawfordlaw.us
E-Mail: scrawford@crawfordlaw.us
Firm File No.H13-0040

*Attorney for Plaintiff, Stanley A. Stein*

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

| | |
|---|---|
| STANLEY A. STEIN : | |
| 2823 Chichester Ave., : | |
| Boothwyn, PA 19061 : | |
| : | IN CIVIL ACTION NO. |
| vs. : | |
| : | |
| NATIONAL BOARD OF OSTEOPATHIC: | JURY TRIAL DEMANDED |
| MEDICAL EXAMINERS, INC. : | |
| 8765 W. Higgins Road, Suite 200, : | |
| Chicago, IL 60631-4174 : | |
| : | |
| Defendant. : | |

## VERIFICATION

I declare under the penalty of perjury that the attached is true and correct. I hereby
verify, swear and affirm that the statements contained herein are true and correct to the
best of my knowledge, information and belief. I understand that false statements herein
are made subject to the penalties of 18 PA.C.S. Section 4904, relating to unsworn
falsification to authorities.

Date: /·/2·/6·

Stanley A. Stein

# EXHIBIT 1



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Philadelphia District Office

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604
Website: www.eeoc.gov

July 2, 2014

Our References:    Stein v. NATIONAL BOARD OF OSTEOPATHIC MEDICAL
EXAMINERS, INC.
Charge No. 530-2013-03349

Stanley Stein
54 Concord Road Apt #A-6
Aston, PA 19014

Dear Mr. Stein:

Action on the above-referenced charge of employment discrimination filed with this office of the U.S. Equal Employment Opportunity Commission ("EEOC") is needed. Enclosed is a copy of the Respondent's position statement for your review. Sending that response to you does not necessarily indicate that the EEOC concurs with the Respondent's position. Please review the position statement enclosed with this letter and submit your rebuttal response in writing directly to me within 15 calendar days of the date of this letter. That is, please inform us why in your opinion the position statement is not accurate or not complete and why the EEOC should therefore continue with its investigation. If you have additional relevant facts or witnesses to support your allegations, please provide this information as part of your response. *Please note that any documents which may be referenced in the response to the charge are not included as evidence cannot be disclosed until after the charge has been closed by EEOC.*

If we do not hear from you, if you do not submit any new evidence, or the evidence submitted by you cannot refute the Respondent's position statement and documentation, a recommendation for dismissal may be made without further investigation or contact with you. In that event, you will be issued a "Dismissal and Notice of Rights" which would enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice.

If you need to obtain clarification, wish to engage in settlement negotiation or otherwise wish to discuss any matter associated with this charge, please do not hesitate to contact us at 215-440-2813.

Sincerely,

Karen McDonough
Enforcement Manager

cc:     Stewart C Crawford, Esq.
CRAWFORD LAW
223 North Monroe Street
Media, PA 19063

.$0417

# KGR | KROGER GARDIS & REGAS, LLP
## ═══ATTORNEYS═══

May 16, 2014

*Via Federal Express 7700 0592 4672*

U.S. Equal Employment
  Opportunity Commission
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107

Attn: Karen McDonough, Enforcement Supervisor

> *Re:   EEOC Charge No. 530-2013-03349*
> *Charging Party: Stein, Stanley*
> *NBOME's formal Position Statement*

Dear Ms. McDonough:

We represent the National Board of Osteopathic Medical Examiners, Inc. ("NBOME") and submit this Position Statement on its behalf in response to the above-referenced Charge.

## NBOME

The NBOME is a nonprofit corporation, tax exempt organization, incorporated and existing under the laws of Indiana.

The mission of the NBOME is "to protect the public by providing the means to assess competencies of osteopathic medicine and related health care professions." *See*, the NBOME's *COMLEX-USA Bulletin of Information, 2013-2014* ("BOI"), enclosed and marked as Exhibit 1. The BOI may also be found at www.nbome.org.

In accordance with its mission, the NBOME develops, administers and reports the scores of the COMLEX-USA series of examinations administered to osteopathic medical students and graduates, primarily for the purpose of state licensure of osteopathic medical physicians.

One of the examinations in the series is the COMLEX-USA Level 2-PE (Performance Evaluation) examination. The NBOME recruited Mr. Stein for the position of Standardized Patient ("SP") to portray the role of a mid-sixties patient for a hypothetical case in that examination and to score student test takers' performances according to the NBOME established protocol.

RECEIVED - EEOC
PHILADELPHIA D.O.
MAY 19 A H: 17

## COMLEX-USA Level 2- PE Examination

The COMLEX-USA Level 2-PE examination is intended to assess the clinical skills of osteopathic medical students, for licensure to practice as an osteopathic physician. It is designed to fulfill the public and licensing authority mandate for enhanced patient safety through documentation of the clinical skills proficiency of graduates from osteopathic medical schools, and augments the written cognitive COMLEX-USA examinations.

Generally, the student encounters twelve SPs over the course of a seven-hour examination day. The SPs "vary in age, gender, and ethnic and cultural background, and the examination includes clinical presentations of a variety of patients that could be acute, chronic or opportunities for health promotion and disease prevention. This diversity of standardized patients is essential to the construct of the examination." *See*, BOI, Exhibit 1, page 10. The "patients encountered are balanced to meet the examination specifications for patients gender and age as a reflection of national osteopathic physician practice patterns based on national survey data as well as expert judgment" *Id.* The examination is described in more detail in NBOME's BOI (Exh. 1, pp. 9-11).[1]

### Standardized Patients

A Standardized Patient is a "person who has been carefully coached to simulate an actual patient so accurately that the simulation cannot be detected by a skilled clinician. (Barrows, 1963) While performing the simulation, the SP represents the 'gestalt' of the person being simulated; not just the history, but the body language, physical findings, personality and emotions." *See,* page 4, *Standardized Patient Manual (Take Home Addition)*, which is enclosed and marked as Exhibit 2. "Standardized" means that the SP should "respond consistently to each candidate, dependent upon their interviewing skills during the simulation [and] allows every candidate an equal opportunity to demonstrate his or her skills in key clinical and interpersonal areas." *Id.*, Exh. 2, p. 6.

The NBOME carefully screens and looks for the following qualities in persons who may become an effective SP: Reliability, Superb recall skills, Ability to follow direction, Ability to think quickly within the context of the SP's case, Flexibility, Fairness, Ability to portray a case believably, Reliability (again). *Id.*, Exh. 2, pp. 6, 7. Being a SP requires the individual to be in good form mentally and physically, and precision in how he or she evaluates students as well as how the SP portrays the case to which he or she is assigned by the NBOME.

The part-time SP employment position for which Mr. Stein was recruited requires a person who appears to be in the mid-sixties, to portray the role of a patient in his mid-sixties for a specific case administered by the NBOME as part of its COMLEX-USA Level 2-PE

---

[1] Additional information regarding the Level 2-PE examination is available in the current *Orientation Guide for COMLEX-USA Level 2-PE* and in an instructional video on COMLEX-USA Level 2-PE, both of which may be accessed at the NBOME's website, www.nbome.org.

examination, and who can objectively and consistently score student candidates encountered by the SP according to the requirements of the NBOME and its scoring protocol.

## Timeline of Events

• *December 2012 (Recruitment/Orientation).* The NBOME advertized for a Standardized Patient to portray the role of a mid-sixties person in a specific case. Mr. Stein responded and was invited to attend a recruiting session to be held on December 19. At that recruiting session the NBOME described the SP program, explained what was expected of SPs, gave Mr. Stein a battery of simple pre-screening tests, and requested that he return at a scheduled time for a "medical screen." This was only a general orientation for potential SP candidates.

> To continue an SP prospect must (a) pass a medical screen to assure he or she has no infectious disease or any disqualifying physical characteristics, (b) attend approximately 6 ½ hours of GPA training, and finally (c) pass four standard "benchmark" assessment tests. All three stages must be successfully completed to continue as a SP.

• *February 13, 2013 (Medical Screen).* Mr. Stein returned to the NBOME for his medical screen, to ensure he could portray the patient role in the case involving a mid-sixties patient if he completed Global Patient Assessment ("GPA") training and then passed the benchmark competency assessment tests. His medical screen on February 13 included an interview with Dr. Helstrom, a Physician Trainer, and a brief medical examination.

> The purpose of the "medical screen" is *only* to determine whether the SP candidate has any infectious disease that would be a risk to others or any exclusion criteria that would preclude the candidate from portraying the patient in the case to which he/she would be assigned, and to ensure that he/she understands the physical nature of the examination process and osteopathic manipulative treatment. It is not a traditional medical examination.

During his medical screen Mr. Stein reported a condition he described as "frontal lobe syndrome." During that interview it was apparent that he lacked appropriate social boundaries. Mr. Stein was sharing much more information than the average SP candidate during initial screening. Some behavior was characteristic of emotional instability. Dr. Helstrom spent significant amount of time listening to Mr. Stein's detailed history of his frontal lobe syndrome. Mr. Stein began to cry while talking about how it affects him. However, he was allowed to continue to GPA training and benchmark competency assessments to further assess whether he was qualified to be an SP. Indeed, when Mr. Stein asked about his condition he was told if passed the competency assessments – the "benchmarks" – that he could do the job.

• *April 22, 2013 (Training Session: approx. 6.5 hours).* Mr. Stein returned to the NBOME and completed a full day of GPA Training, which included several other SP candidates. This GPA Training was facilitated by a SP Trainer and Dr. Gallagher, the Chief Physician Trainer, and included instruction and practice using the *GPA tool* to properly and objectively score test takers. Mr. Stein was attentive and engaged in this training. However his rationale for

the practice scoring of videos of medical student test takers was not always anchored in the bullet points of the GPA scoring rubric, but instead in his personal opinion.

> The *GPA tool* is meant to be as objective as possible to limit subjectivity and personal bias in rating. A copy of the *GPA Training Protocols* is enclosed and marked as Exhibit 3. The GPA training included review of GPA objectives, content, bullet points for an objective rating of the test takers, review of examples, practice scoring of encounters, and discussions. It is instructional and interactive solely to train potential SPs how to interact with and objectively score the clinical skills of medical students and graduates.

> Mr. Stein was not given any benchmark competency assessment during this training and practice session. The assessments of his qualification would come the next day.

• *April 23, 2013 (Benchmark Competency Test: approx. 4 hours)*. Mr. Stein returned the next day for his competency tests, the "benchmark" assessments using four medical student video encounters. Prior to taking his "benchmarks" he briefly met with Dr. Helstrom, the Physician Training who had conducted the medical screen in February. Dr. Helstrom had follow-up questions to get a better understanding of his "frontal lobe syndrome" and to be sure that he would be comfortable with the demands of an SP portraying a patient who would be examined by medical students. Mr. Stein implied he could do that job and was allowed to proceed with the benchmark video encounters to assess his competency to perform the responsibilities of a SP. Dr. Helstom did not participate in Mr. Stein's benchmark competency assessments.

> The benchmark assessments session protocol is to have the potential SPs watch and score the first encounter, review their scores with the SP Trainer, and then have them score the final three encounters on their own. The SP Trainer reviews and grades the SPs scores of all four benchmark videos, and explains the results to the SPs.

> The same four benchmark videos used to assess Mr. Stein's competencies to perform the role and score candidates *were used for all potential SPs*. Contrary to his allegations, the benchmark assessments were not different for him, nor "rigged" to cause him to fail.

> The Standardized Patient Manual, which was available to Mr. Stein, specifically provides that if a potential SP "cannot demonstrate competency using the GPA rubric, you are not able to work at NBOME as a Standardized Patient."

The SP Trainer, Mr. Hendricks, administered the benchmark competency assessments to Mr. Stein, the same as he did for all other SP prospects related to the cases for which he was responsible. The benchmarks administered to Mr. Stein were the same standard benchmarks administered to all other SP prospects. Mr. Stein was not treated any differently in this regard.

Mr. Stein did not meet the NBOME's expectations because he could not demonstrate his competency in using the GPA tool and rubric for scoring medical student test takers, a qualification that is essential to proper objective and consistent scoring of the clinical performance of all test takers. Mr. Hendricks and the Chief Physician Trainer, Dr. Gallagher, met

with Mr. Stein, and explained to him why he did not successfully fulfill the prerequisites of an SP to continue as an SP with the NBOME. He was disappointed but had no additional question.

Mr. Stein was paid for the two days of training and testing he spent with the NBOME on April 22-23, 2013, and his file closed.

## Not Qualified for Position of SP

The decision of the NBOME that Mr. Stein was not qualified for the position of an SP, and thus could not continue as an employee of the NBOME, was made solely because he had failed to pass the "benchmarks" required of all SPs to demonstrate competency using the GPA tool, an essential qualification for the position of an SP. If an SP cannot objectively and properly score student test taker encounters, the COMLEX-USA Level 2-PE examination would not be valid.

If Mr. Stein had passed those "benchmarks" to show that he could properly score test takers using the GPA tool and rubric, the NBOME would have retained him as a SP to portray the role of a mid-sixties patient. Unfortunately he did not, and thus Mr. Stein was not qualified for the job.

## No Violation of ADEA

Only a SP who appears to be in his mid-sixties could portray the role of a patient in his mid-sixties. Mr. Stein was in fact *recruited* by the NBOME because he appeared to be a person in his mid-sixties. Mr. Stein's age, at least the appearance of a person of his age, was a *criteria* for the position - indeed only persons of his age or appeared to be in his mid-sixties could qualify for the job. Certainly age was not a factor in the NBOME's decision not to retain him as a SP.

Indeed, after Mr. Stein failed to pass the "benchmarks," the NBOME eventually assigned the case to an existing SP age 62 to portray the patient in the case for which the NBOME had hoped Mr. Stein would be assigned.

Mr. Stein was not retained as a SP simply because his benchmark competency assessments showed he was not qualified to properly perform the job, not because of his age.

Consequently, Mr. Stein's Charge under the Age Discrimination in Employment Act (ADEA) that he was discriminated against by the NBOME because of his age is without merit.

## No Violation of ADA

Although Mr. Stein reports that he suffered from "frontal lobe syndrome," he does not establish that he is a "person with disabilities" as defined under the Americans with Disability Act as amended in 2008 (ADA).[2] Nor did the NBOME consider him to be a person with

---

[2] A "person with disabilities" as a protected class under the ADA is a person with a physical or mental impairment that substantially limits one or more major life activities, as compared to most people in the general population.

disabilities. Indeed, it permitted him to proceed with GPA training and the benchmark competency testing.

Nonetheless, it is not relevant whether Mr. Stein's reported "frontal lobe syndrome" is a "disability" as defined under the ADA. It remains that Mr. Stein was unable to demonstrate to the satisfaction of the NBOME that he was qualified to objectively and appropriately score SP encounters according to the GPA rubric required of all SPs, an essential part of the job.

A SP's competency in his or her performance portraying a patient and objectively scoring the clinic skills of osteopathic medical student and graduate encounters with SPs, using the GPA rubric required of all SPs, is essential to the NBOME's mission "to protect the public by providing the means to assess competencies of osteopathic medicine," and thus is essential to the job of an SP for which Mr. Stein was being recruited.

Contrary to Mr. Stein's Charge that he was not retained as a SP because of his "frontal lobe syndrome," the fact is that Mr. Stein was not retained by the NBOME because he had failed to pass the "benchmark" competency assessment tests essential to the job of an SP, and thus he is not qualified to perform the essential responsibilities of a SP.

The protections of the ADA extend only to "qualified individuals with a disability." 42 U.S.C. §12112(a); *Basith v. Cook County*, 341 F.3d 919, 927 (7th Cir. 2000). An employer does not violate the ADA if the charging party is not otherwise qualified to perform the job at issue. Because Mr. Stein could not perform an essential function of the SP position, he was not qualified for that job, regardless whether or not he was a person with disabilities under the ADA.

Consequently, Mr. Stein's Charge that the NBOME discriminated against him in violation of the ADA because of his "frontal lobe syndrome" is without merit.

## Conclusion

The NBOME did not violate either the ADEA or ADA.

The NBOME reserves to right to supplement this statement to further address specific allegations and misstatements made by Mr. Stein in his Charge should it become necessary.

Please contact me if you have any question or need further information.

Respectfully Submitted,

Sydney L. Steele

Enclosures:

---

Merely having "frontal lobe syndrome" does not necessarily translate to a "disability" under the ADA. More must be shown, as required by the definition of a "person with disabilities."

KROGER GARDIS & REGAS, LLP
111 MONUMENT CIRCLE, SUITE 900 INDIANAPOLIS, INDIANA 46204-5125
PHONE (317) 692-9000 FAX (317) 264-6832 KGRLAW.COM

# EXHIBIT B

**FREEMAN MATHIS & GARY, LLP**
**Attorneys at Law**
**By:   JENNIFER L. WARD, ESQUIRE**
**        CHRISTOPHER M. CURCI, ESQUIRE**
**Attorney ID Numbers: 85019/309820**
**1800 John F. Kennedy Blvd.**
**Suite 1500**
**Philadelphia, PA 19103**
**Phone: (267) 758-6009**
**Fax: (267) 239-0050**
**Emails: jward@fmglaw.com/ccurci@fmglaw.com**
**Attorneys for Defendant, National Board of Osteopathic Medical Examiners, Inc.**

### IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
### PENNSYLVANIA

| | |
|---|---|
| **STANLEY A. STEIN,**<br>                    **Plaintiff,**<br><br>**v.**<br><br>**NATIONAL BOARD OF OSTEOPATHIC**<br>**MEDICAL EXAMINERS, INC.,**<br><br>                **Defendant.** | **CIVIL ACTION NO.: 2016-005775** |

TO:   The Office of Judicial Records of the
       Court of Common Pleas of Delaware County

       Pursuant to 28 U.S.C. § 1446(d), Defendant, National Board of Osteopathic Medical

Examiners, Inc., files herewith a copy of the Notice of Removal filed in the United States

District Court for the Eastern District of Pennsylvania on the 1st day of August, 2016.

                            Respectfully submitted,

                            **FREEMAN MATHIS & GARY, LLP**

Dated: August 1, 2016          By:   _____
                                    CHRISTOPHER M. CURCI, ESQUIRE
                                    Attorneys for Defendant
                                    National Board of Osteopathic Medical
                                    Examiners, Inc.

1682827_1.doc

# EXHIBIT C



# Delaware County, Pennsylvania
Rich in Culture, History and Commerce



Departments...           ▼   Services...                    ▼

Judgment Index Search |   Case Search |

<< Back to previous page

## Case Information
Date: July 28, 2016 2:09:04 PM EDT

|  |  |  |
|---|---|---|
| 07/01/2016 | 2016-005775 | Civil Action- Complaint |

## Litigant(s) Information

|  |  | Litigant Type |  |  |
|---|---|---|---|---|
| STEIN, STANLEY A | CRAWFORD JR, STEWART C | Plaintiff | 2823 CHICHESTER AVENUE MARCUS HOOK PENNSYLVANIA 19061 | 07/01/2016 |
| NATIONAL BOARD OF OSTEOPATHIC MEDICAL EXAMINERS, INC. |  | Defendant | 8765 W. HIGGINS ROAD, SUITE 200 CHICAGO ILLINOIS 60631 | 07/01/2016 |

## Docket Information

| Docket Type | Filer | Filing Attorney | Receipt Entry Date | Docket Entry Time | Receipt |
|---|---|---|---|---|---|
| Entry of Appearance | FOR STEWART C CRAWFORD , JR ESQ ATTY FOR PLAINTIFF |  | 07/01/2016 | 03:51:07 AM | View Image |
| Receivable Created For $285.50 |  |  | 07/01/2016 | 03:53:15 PM |  |
| Case Initiated - Writ of Summons | COMPLAINT |  | 07/01/2016 | 03:53:15 PM | View Image |
| Receipt# 181069 generated for the amount of $ 285.50 |  |  | 07/01/2016 | 03:55:30 PM |  |
| Affidavit of Service |  |  | 07/21/2016 | 11:23:30 AM | View Image |
| Praecipe | PRAECIPE TO ATTACH NOTICE DEFEND TO RECORD | CRAWFORD JR, STEWART C | 07/21/2016 | 11:23:44 AM | View Image |

## Click to see Judgment Details information

# Crawford Law

## A Full Service Law Firm

55 N. Lansdowne Avenue
Lansdowne, PA 19050
(877) 992-6311 (Toll Free)
(484) 469-4924 (Facsimile)
www.crawfordlaw.us

Stew Crawford, Jr., Esq.
scrawford@crawfordlaw.us

July 6, 2016

**VIA CERTIFIED USPS MAIL**
National Board of Osteopathic
Medical Examiners, Inc
8765 W. Higgins Road,
Suite 200
Chicago, IL 60631-4174

> **RE: Stanley A. Stein v National Board of Osteopathic Medical Examiners, Inc**
> **Delaware County C.C.P. Civil Action No: 2016-005775**
> **Our Firm File No.: H13-0029**

Dear Sir or Madam,

This Law Firm represents Stanley A. Stein in reference to the above captioned case. Please find enclosed a time stamped complaint and time stamped Entry of Appearance.

Please contact me if you should have any questions.

Sincerely,

Stewart C. Crawford, Jr., Esquire
Attorney for Plaintiff

THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
doing business as CRAWFORD LAW
By: Stewart C. Crawford, Jr., Esquire
Attorney Id. No.: 202188
55 N. Lansdowne Avenue
Lansdowne, Pa 19050
Telephone: (877)-992-6311
Web: www.crawfordlaw.us
E-Mail: scrawford@crawfordlaw.us
Firm File No. H13-0029

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

STANLEY A. STEIN                          :
2823 Chichester Ave.,                     :
Boothwyn, PA 19061                        :          IN CIVIL ACTION NO.
                                          :          $2016 - 5775$
           vs.                            :
                                          :
NATIONAL BOARD OF OSTEOPATHIC:                       JURY TRIAL DEMANDED
MEDICAL EXAMINERS, INC.                   :
8765 W. Higgins Road, Suite 200,          :
Chicago, IL 60631-4174                    :
                                          :
           Defendant.                     :

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of the Defendant.

_____
Stewart C. Crawford, Jr., Esquire
*Counsel for Stanley A. Stein*

Date: 07-01-16

THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
By: Stewart C. Crawford, Jr., Esquire
Attorney Id. No.: 202188
55 North Lansdowne Avenue
Lansdowne, PA 19050
Telephone: (877)-992-6311
Web: www.crawfordlaw.us
E-Mail: scrawford@crawfordlaw.us
Firm File No. H13-0029

*Attorney for Plaintiff, Stanley A. Stein*

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

| | | |
|---|---|---|
| STANLEY A. STEIN | : | |
| 2823 Chichester Ave., | : | |
| Boothwyn, PA 19061 | : | IN CIVIL ACTION NO. 2016-5775 |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF OSTEOPATHIC: | | |
| MEDICAL EXAMINERS, INC. | : | |
| 8765 W. Higgins Road, Suite 200, | : | |
| Chicago, IL 60631-4174 | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

## **AFFIDAVIT OF SERVICE**

The Complaint in this matter was docketed on July 1, 2016. On July 8, 2016 the

Complaint was mailed, by certified mail, return receipt requested, to the defendant, National

Board of Osteopathic Medical Examiners, Inc. See Exhibit A. On July 18, 2016 the receipt for

that certified mailing (i.e. the green card) was returned reflecting that the defendant received the

Complaint and Process on July 12, 2016. See Exhibit A. Service of process has accordingly been

made pursuant to 42 *Pa. C.S.* § 5322 and *Pa. R.C.P. No.* 404.

By: _____

Stewart C. Crawford, Jr., Esquire
*Attorney for Plaintiff, Stanley A. Stein*

1

*Exhibit A*



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent   ☐ Addressee

B. Received by (Printed Name): Kristen Arms
C. Date of Delivery: 7/12/2016

1. Article Addressed to:

National Board of Osteopathic
Medical Examiners, Inc.
8765 W. Higgins Rd., Suite 200
Chicago, IL 60631-4174

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

9590 9401 0181 5234 9775 65

2. Article Number (Transfer from service label)

7014 1200 0001 0277 1027

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

---



USPS TRACKING STREAM

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9401 0181 5234 9775 65

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Crawford Law**
55 N. Lansdowne Ave.
Lansdowne, Pa. 19050

English        Customer Service        USPS Mobile                                    Register / Sign In

# ⧁USPS.COM'

## USPS Tracking®


  **Customer Service ›**
Have questions? We're here to help.

  **Get Easy Tracking Updates ›**
Sign up for My USPS.

**Tracking Number: 70141200000102771027**

**Updated Delivery Day: Tuesday, July 12, 2016**

## Product & Tracking Information                    Available Actions

**Postal Product:**              **Features:**
First-Class Mail®                Certified Mail™        Return Receipt        **Text Updates**

                                 **See tracking for related Item: 9590940101815234977565**        **Email Updates**

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **July 12, 2016 , 2:16 pm** | **Delivered, Left with Individual** | **CHICAGO, IL 60631** |
| | Your item was delivered to an individual at the address at 2:16 pm on | |
| July 12, 2016 , 10:27 am | Out for Delivery | CHICAGO, IL 60631 |
| July 12, 2016 , 10:17 am | Sorting Complete | CHICAGO, IL 60631 |
| July 12, 2016 , 8:09 am | Arrived at Unit | CHICAGO, IL 60631 |
| July 11, 2016 , 2:16 am | Departed USPS Destination Facility | CHICAGO, IL 60607 |
| July 10, 2016 , 2:33 pm | Arrived at USPS Destination Facility | CHICAGO, IL 60607 |
| July 8, 2016 , 11:04 pm | Departed USPS Origin Facility | PHILADELPHIA, PA 19176 |
| July 8, 2016 , 9:39 pm | Arrived at USPS Origin Facility | PHILADELPHIA, PA 19176 |
| July 8, 2016 , 4:47 pm | Departed Post Office | HAVERTOWN, PA 19083 |
| July 8, 2016 , 8:57 am | Acceptance | HAVERTOWN, PA 19083 |

## Track Another Package                    ## Manage Incoming Packages

**Tracking (or receipt) number**              Track all your packages from a dashboard.
                                             No tracking numbers necessary.

                                  **Track It**        **Sign up for My USPS ›**        

THE LAW OFFICES OF STEWART C. CRAWFORD & ASSOCIATES
By: Stewart C. Crawford, Jr., Esquire
Attorney Id. No.: 202188
55 North Lansdowne Avenue
Lansdowne, PA 19050
Telephone: (877)-992-6311
Web: www.crawfordlaw.us
E-Mail: scrawford@crawfordlaw.us
Firm File No. H13-0029

*Attorney for Plaintiff, Stanley A. Stein*

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

| | | |
|---|---|---|
| STANLEY A. STEIN | : | |
| 2823 Chichester Ave., | : | |
| Boothwyn, PA 19061 | : | IN CIVIL ACTION NO. 2016-5775 |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF OSTEOPATHIC: | | |
| MEDICAL EXAMINERS, INC. | : | |
| 8765 W. Higgins Road, Suite 200, | : | |
| Chicago, IL 60631-4174 | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

## Certificate of Service

I, Stewart C. Crawford, Esquire, Attorney for Plaintiff, *Stanley A. Stein,* hereby

certify that a copy of Plaintiffs' Affidavit of Service was filed in the above-entitled action

and served upon the following on July 19, 2016 via USPS first class mail:

NATIONAL BOARD OF OSTEOPATHIC:
MEDICAL EXAMINERS, INC.          :
8765 W. Higgins Road, Suite 200,    :
Chicago, IL 60631-4174

By:_____
Stewart C. Crawford, Jr., Esquire
*Attorney for Plaintiff*

Dated: June 19, 2016

3